*162 Tbe facts in the case, which refer to the questions of law considered by the Court, sufficiently appear from their opinion, which was drawn up by
Tenney, C. J.
The land, the title to which is in controversy, is a portion of the farm, in the town of Warren, which was formerly called the Boggs farm, consisting of about eighty acres. The suit first named is an action in a plea of land for the entire farm. The tenant disclaims a portion thereof, and defends for the residue, under cei’tain deeds, to be mentioned hereafter, and a partition, in which parts are assigned to him, in a process instituted by him, in which an interlocutory judgment was rendered in 1851; and the partition made by commissioners, afterwards affirmed and recorded, wherein the present demandant was a party defendant. The latter claims to have derived a title to that portion of the farm claimed by the tenant in his petition since the interlocutory judgment, superior to that upon which the petition for partition was founded, from a person, who was neither party nor privy to that process.
The other- suit is trespass qu. cl. for acts alleged to have been committed on the land in question.
In the trial of the action first named, the demandant introduced, a deed tó himself, executed by Jane Boggs, his mother, and Nancy Boggs, and Betsey McCollam, his sisters, and daughters of said Jane, dated February 4, 1852, recorded February 14, 1852 ; a mortgage deed with covenants of warranty from John Boggs, jr., his brother, and son of. said Jane,;to John Boggs, sen., and said Jane, his parents, dated April 25, 1820, recorded June 10, 1829, conditioned to be void, if the mortgager should support through their lives the mortgagees; and a foreclosure of this mortgage by said Jane Boggs, the surviving mortgagee, by publication in a newspaper, and a record of that publication" in the registry of deeds, which foreclosure, it is contended became perfected against the tenant, and those under whom he claims on September 26, Í848.
The tenant relies upon a deed dated September 4, 1812, *163 from Samuel Parkman, of the Boggs farm, which was recorded September 15, 1812, to Jane Boggs, and the children of John Boggs, sen., and said Jane, their heirs and assigns ; also a deed dated April 25, 1823, recorded. August 22, 1823, from John Boggs, sen., Jane, his wife, and their children, Betsey, James, Ebcnezer, Andrew, and Nancy Boggs, to John Boggs, jr., son of John Boggs, sen., and Jane his wife, of the same premises. The children of said John Boggs, sen., and Jane his wife, are shown to have been those just named, and George, who did not execute the deed. John Boggs, sen., died in 1841, and Jane his widow, in 1855. George, their son, died on July 2, 1829, and James on September 22, 1833, neither having been married, and Ebcnezer died abroad on June 17, 1840, and it does not appear by the case that ho left issue. The deed last named contains covenants of seizin and warranty against all persons excepting George Boggs, a son of John Boggs, sen., and Jane his wife. The tenant also introduced a deed of mortgage from John Boggs, jr., to William Ilovey of the same premises, dated May 1, 1829, recorded May 2, 1829, with notes secured thereby, outstanding; and a foreclosure by publication and registration thereof, which became effectual May 9, 1851; also a mortgage from said John Boggs, jr., to Thomas Hodgman, of the same laud, dated May 13, 1829, recorded May 19, 1829, which became foreclosed, by publication and registry of the same, April 26, 1852. Both these mortgages contained covenants of seizin, right to convey and warranty against the lawful claims of all persons. The mortgage to William Ilovey was assigned to the tenant May 1, 1851, and the assignment recorded Sept. 8, 1851. The mortgage to Thomas Hodgman was assigned to the same, March 23, 1833, and recorded.Feb. 16, 1839. At the time of the conveyance made by John Boggs, sen., his wife and all their children, excepting George, — Nancy, Ebenezer, and Andrew were minors, under the age of twenty-one years, and it appears that they executed the deed themselves and not by guardians. It is contended, how *164 ever, by the counsel for the tenant, and does not seem to be controverted in argument for the demandant, that Ebenezer Boggs, by giving and receiving deeds to, and from John Boggs, jr., after he became of the age of twenty-one years, which deeds are in the case, confirmed his deed of April 25, 1823. Upon an examination of the deeds relied upon for this purpose, and the evidence in the case, we think this view correct. But this does not become essential to the decision of the case before us, inasmuch as the tenant defends his portion of- the whole farm set off to him, in severalty, a part of which is the share of Ebenezer, and the demandant claiming under the deed of John, jr., as well as the tenant does, the confirmation of John Boggs, jr.’s title to the share of Ebenezer, will inure to the benefit of the 'demandant, under the mortgage to John Boggs, sen., and his wife, if that mortgage gives a title superior to that of the mortgages to William Hovey and Thomas Hodgman, under which the tenant derives his title.
George Boggs, who did not join in the deed to John Boggs jr., o’f April 25, 1823, having died without issue, while his father was living, the latter was his heir, and took the right in the farm which George acquired under the deed from Parkman. On the death of John Boggs, sen., the estate which he acquired as the heir of. George, in the farm, descended to the father’s children; and the right thus derived by John, jr., inured to the benefit of his mother Jane, as surviving mortgagee under the mortgage deed of April 25, 1820, to her husband and herself; or, to William Hovey and Thomas Hodgman, by virtue of the covenants in each of these mortgages respectively; and we have seen that John. Boggs, jr., had acquired §¿- parts of the whole farm, by having ¿¶ parts directly under Parkman’s deed, parts under the deed to him, of April 25, 1823, from Jane, his mother, and Betsey, James and Ebenezer, and aV part being what he derived from his father, of the portion under-the Parkman deed, which belonged to George Boggs.
If all these deeds, introduced in the case, had been re *165 corded immediately upon their execution, and the proceedings to foreclose the several mortgages were according to law,' which is not disputed, the title of Jane Boggs, the surviving mortgagee in the deed to her and her husband, of April 25, 1820, became perfect and absolute to the extent of the interest which John Boggs, jr., ever had in the farm, but not of the parts belonging to Nancy and Andrew Boggs under the Parkman deed, because they were minors when the deed, with their names as grantors affixed, of April 25, 1823, was given.
But, if the mortgages to Hovey and Hodgman, which were dated in May, 1829, and recorded the same month, took precedence of the mortgage to John Boggs, sen., and Jane, his wife, which, though dated much earlier, were not recorded till June 10, 1829, Jane Boggs had no title when the tenant filed his petition for partition, and there was no necessity that she should be a party to that process, and the demandant is concluded by the judgment of partition.
The great question in the case is, therefore, whether the evidence therein, as matter of law or fact, or both, which is wholly submitted to the Court, are sufficient to charge Hovey or Hodgman, under the law as it existed previous to the R. S. of 1841, with notice of the mortgage deed of John Boggs, jr., to his parents, of April 25, 1820.
The father of John Boggs, jr., lived on the farm from the earliest recollection of Nancy Boggs, his daughter, who was born in 1802, and ho continued to live there till his death. John lived there, also, after the deed of' April 25, 1823, till he was married, which was in 1833. The father and his family, including John, jr., ate at the same table, the father and mother being supported’ by John, by the help of the father’s family, till a short time before the marriage of John, jr. According to the testimony of William Hovey, at the time he took his mortgage from John, jr., he was in possession of the farm, and the father also was there; and the latter had always lived on the place and died there.
Judge Trowbridge, in his Readings upon the Provincial *166 statute of Massachusetts Bay, for registering deeds and conveyances, published in 3d Mass., 573, says: — "If the second purchaser had notice of the first conveyance, before he purchased, no estate would pass to him by the second deed, though recorded before the first, because it is fraudulent.” Again, — "if the bargainee, upon the execution of the deed, enters upon the land, by force of it, and continues in possession, taking the profits thereof without recording his deed, there can be no ¡purchaser of that land, without notice in the sense of the law; because the law deems such entry and occupation sufficient evidence of the property. And the bargainor, having neither the real nor apparent right of possession or of property, is not capable of conveying the land, and a deed thereof to a third person is, by the common law, accounted fraudulent and void.” In the foregoing extract, the entry of the first purchaser seems to be relied upon as having importance; but, in other discussions of the same subject, it is not always regarded so material when the grantee of the unrecorded deed was in possession of the land before and after its delivery.
" The registry is designed only to give notice, in order to prevent purchasers being imposed upon by prior conveyances, which they are in no danger of, when they have notice of them.” Wormley v. DeMattos, 1 Bur., 474; McMechan v. Griffing, 3 Pick., 119.
In the case of Webster v. Maddox, 6 Greenl., 256, which was when Maddox was the undisputed owner of the land and conveyed to one Bean, who, at the same time, conveyed in mortgage the premises to Maddox and his two minor sons. The' latter deed was unrecorded at the time Webster caused the land to be attached as the property of Bean; and he levied his execution thereon, before the attachment expired. The Court say — "That Bean was never in possession of the premises, but Maddox and his sons were; at least the tenant was, even if the sons were resident on the premises merely as a part of his family. Such was the state of the possession when both deeds were delivered and took effect. *167 Now it is a well settled principle of law, requiring at this day no citation of authorities to support it, that the open and peaceable possession of real estate, by the grantee under his deed, perfects and secures his title as effectually as the registry of his title deed.” It is further said, that the " vain ceremony of the entry and of the taking of possession merely, was not necessary to give notice to any one; for, at the time the deed was delivered to him, he was already in possession. The title was gone from Bean and vested in the tenant.”
Matthews v. Demerritt, 22 Maine, 312, was a case in which the title was in one Dunn, who conveyed on July 18, 1837, and the deed was recorded April 26, 1838, to John P. Briggs and his wife, as joint tenants. John P. Briggs died July 22, 1837, and the deed from Dunn was delivered to Mrs. Briggs soon after his death. He lived in the house two or three months before his death, and the tenant boarded in the house, before Briggs died, and had lived there ever since. Dunn never claimed to exercise any ownership over the property/ The demandant, on April 18, 1838, made an attachment of the premises, which was succeeded by a levy thereon, within thirty days after the judgment was rendered, as on the property of Dunn. The Court, by Shepley, J., says, — "Before this attachment, Dunn had conveyed the premises, on July 18, 1837, to John P. Briggs and his wife as joint tenants,, by a deed, not recorded till after the attachment. But the grantees at the time were in possession of the dwellinghouse and lot conveyed, and they continued in the open and exclusive possession thereof, till after the levy.” "It has long been the settled construction, requiring the registry of conveyances, that the visible possession of an improved estate by the grantee under his deed, is implied notice of the sale to subsequent purchasers, although his deed has not been recorded.” "A change of possession at the time of the first conveyance, would seem to be required only, when the second purchaser is proved to have known, before the conveyance to the first purchaser, *168 that he was in possession without claiming title, or when from the circumstances such knowledge must be presumed.”
The case of McKecknie v. Hoskins, 23 Maine, 231, was where one Bawley, the owner of the premises, conveyed to Moulton, taking back at the same time, a mortgage to secure the purchase money, on July 2Q, 1835. The deed to Moulton was recorded July 9, 1837, and the mortgage Oct. 28, 1836, which was assigned to the demandant on Oct. 30, 1839, and the assignment recorded the next day. Moulton made another mortgage of the premises to Eli Hoskins, on Oct. 29, 1835, which was recorded on the same day, and-assigned to the tenant. Bawley occupied the land, at the time he gave the deed and took the mortgage, and so continued till long- after the mortgage to Eli Hoskins. The former owner of the premises, Bawley, by a writing dated July 15, 1835, sold to Moulton one half the crops of all kinds, and herbage, then standing- and growing on the land, conveyed to Moulton, "by deed of even date herewith,” and the materials for erecting a house lying on the premises, the said Moulton to furnish at his own expense, one man to help cut and make the hay, "the present season.” ■ .The Court held that, as between the parties to that transaction, and those claiming under them respectively, the legal title was under the mortgage from Moulton to Bawley, and that he and those claiming under him had the right of possession at all times, till the condition of defeasance should be fulfilled. He was in possession at the time he took his mortgage, and so continued till after the time that Moulton mortgaged to. Eli Hoskins. "The demandant must be'treated as being in possession by right, and cannot be presumed, in the absence of evidence, to hold the possession under a title inferior to that which he in part had.” And it. was held that the demandant must be regarded as having possession under the mortgage to his assignor j and, by the authority of the case of Webster v. Maddox, that possession perfected his title as fully as would be done by a registry of the deeds;
In the two cases first cited from the Maine Reports, it ap *169 pears that the persons who had the legal title had been in the exclusive possession before the conveyance, and so continued afterwards. This exclusive possession was a fact presented by the evidence, and this certainly did not weaken the effect, touching the implied notice, but it is not made the test on which the decision rests. It is not held that it was necessary, to constitute such notice, that the possession should be exclusive, provided the party having an unrecorded deed was in actual possession.
In the case last cited it does not appear that the possession of the first mortgagee was an exclusive possession, nor that such was the case with the demandant holding under him, but the case was decided upon the ground, that the possession of the one having the legal title was notice to the second mortgagee, of a right superior to that of his own grantor.
The mortgage to John Boggs, sen., and his wife, though dated April 25, 1820, was acknowledged April 25, 1823, before the same magistrate who took the acknowledgment of the deed from John Boggs, sen., his wife Jane and then-children, dated April 25, 1823; and the condition in the mortgage refers to a contract of even date therewith, which is dated April 25, 1823, and is evidence in the case. The two deeds were probably written on the same day, and the discrepancy in the dates was by error of the scrivener. We cannot doubt that the delivery of both were parts of the same transaction and must be so treated.
From the whole evidence in the case, we think, under the law, as it was at the time that Hovey and llodgman took their mortgages, the long possession of John Boggs, sen., without any change or interruption before and after the deed was given by him, his wife and children, to his son John, and the facts connected therewith as they appear in the case, must be regarded as implied notice of the title, which he actually had, the entire legal title being at that time in John Boggs, sen., and his wife. It was not a case, where he had no title, before this mortgage to him and his wife. It is *170 satisfactorily shown that this possession run back to a time anterior to that, when the deed was given to his wife and children, and this deed is no more than a naked release. If it passed a title in fact, it of itself, conferred legal rights upon him, including the right of possession as the law then was. In right of his wife, under the deed, he had a freehold during her life, to the portion conveyed to her. If he had survived her, he would then have been the tenant by the curtesy.
All the right, which John Boggs, jr., had in the farm, passed to his father and his wife under the mortgage deed to them, the covenants therein, and the foreclosure of the same. This title became absolute in Jane Boggs, over the conveyances of John Boggs, jr., of the same title to Hovey and Hodgman. As the basis of the partition, the tenant claimed no other title in the farm, than that which he derived from John, jr., through the mortgages to Hovey and Hodgman. At the time he filed his petition for partition, and at the time of the interlocutory judgment, the absolute title of the portion claimed therein was in Jane Boggs, which passed afterwards to the demandant.
It is insisted, that the demandant is not the owner of Betsey McCollam’s share in the farm, which she inherited from her father, that once belonged to George Boggs, deceased, and he derived no title thereto, her husband not having joined her in the deed, in 1852, which was prior to the statute, authorizing married women to convey real estate, without being joined by their husband. But this portion of the farm is not in dispute. The title claimed by the tenant in his petition was to that part of the farm, which he had derived from John Boggs, jr. The share, which Betsey McCollam inherited from her father was not embraced. The partition therefore was made without reference to this, and, after the disclaimer in this suit by the tenant, the interest obtained by the demandant from-her was not in issue.
The action of trespass was commenced in September, 1853, for acts alleged to have been done upon the premises *171 in controversy, after the defendant therein derived the title, which lie relies upon. Under the view which we have taken, these acts were not tortious, and the action cannot be maintained.
In the action, Andrew Boggs v. Hugh Anderson, Defendant defaulted, judgment for the demandant.
In the action, Hugh Anderson v. Andrew Boggs, Plaintiff nonsuit, judgment for defendant.
Nice, Appleton, May and Kent, JJ., concurred.